Chief Justice Robertson
delivered the opinion of the Court.
This is an action of assumpsit, by Ab-salomW. Waller, against the bank of Kentucky, for compensation, which he claims for services, as one of its clerks, since 1825.
Supposing that the bank could not be legally bound by any contract, which had not been authenticated by its corporate seal, the circuit court sustained a demurrer, to the declaration, and Waller has prosecuted this writ of error, with a supeisedeas.
As the declaration is in sufficient form, the principal question, which the record presents for our consideration, is, whether assumpsit can be maintained against a corporation?
As a corporation has no natural existence, l?ut is exclusively an artificial being, it is represented and recognized by its corporate seal, which is substituted as the sensible emblem or effigy of that, which is created by, and exists only in law.
Therefore, as a general proposition, it is undcuia. ble, that a corporation cannot act without a seal.
But is'this proposition universal?.
As a corporation has no visible or actual existence, and is known by its seal, some of the elementary writers have inferred, and therefore, have stated, in *202 comprehensive terms, without any exception, or qualiCCilti°n5 that a corporate body can make no valid contract, of any kind, or for any purpose, nor do any other legal act, without the authentication of its seal.
When corpot ration makes contract, its beex4 ressed through corporate sea), ct b a^tat°r" ute, tlbind" ^ffixationa?4 Jtsseaj,
Blackstone, (I. Com. 475) says, “a corporation, being an invisible body, cannot manifest its inten-tions, by any personal act, or oral discourse;it there-, fore acts, and speaks, only by its common seal.”
'Blackstone’s deduction, is as logical, as his premises are true. But many, who have seen this, and similar authorities, in some other books, have extended their consequences further‘than the text in Blackstone requires, and beyond tbeTeason,from which he deduced bis general proposition.
’ft is true, that a -corporation has no persona! identity; it is, therefore, - necessarily true, that it can do np personal act; has no personal rights; and, is under, no personal obligations. Consequently, it cannot bold an office; nor be an executor; nor make a will; It can only appear in courfby attorney; ftcan neither sue, nor be sued, for a battery, “for it can neither beat, nor be beaten, in'its’body 'politic.” It cannot ■commit a crime, nor be committed to prison.
It is equally true, that a corporation aggregate can have but one will, and that is compounded of the united wills of its several constituent members; and that, consequently, as all the natural'persons, composing the'body corporate, constitute only one person, in confemplation of law, whose being is corporate.only, the seal of the corporation “unites the several assents of thfe individuals who compose the community, and makes one joint assent of the whole.”
When a corporation makes n-contract directly, and by its own immediate volition, its assent must be expressed through its corporate seal, unless it be author-'ze<^ ^y express statute, to bind itself .without the affix-ationof .its seal. This is a necessary consequence, from the nature of a corporation. It possesses, indi-vfcJuality, only in contemplation of law, and -is seen and acknowledged only, through its seal.
But, does it not result as a corollary, that a corporation can do no act, which shall be binding upon *203 it, nor incur any liability by either its assent or the operation of law, unless the act, or liability be attested by its seal?
In its rela~v tion, as an individual, to natural persons, it can be accredited, only by its seal. Bin for regulating itself., and in its own police, it may act efficiently without seal. May pass biz-laws; elect its officers and agents, and keep record ofits proceedings; and they are all valid, without affixation of seal. It cannot contradict its feof-
In its relation as an individual, with pa'tural persons, it can be accredited only by its seal. But for regulating itself, and determining its own police and rules of action, it may will and act efficiently without the instrumentality of its seal. It may pass by-law?, and the seal is not necessary to their validity. It may elect its officers and agents, without attesting their appointments, by letters patent. It may ' keep a record ofits proceedings, and this will be good without the seal. It cannot deny o.r contradict its record; and, therefore, it is bound by its record'. I. Salkeld, 192; I. Lord Raymond, 688.
“An aggregate corporation may employ any one in ordinary services, without deed, I. Vent. 47.”
“Such a corporation may appoint a bailiff, tn-take a distress, without deed or warrant.”' I; Salkeld, 191.
“A corporation may,.without seal, duly authorize an agent to sign notes.” Rex vs. Bigly, III Pr. Wms. 419.
Although no special, mode be prescribed by law,, for transfering stock, it may be transferred, without the use of the. seal. Shipley, et al. vs. The Mechanics Bank, X, Johnson, 484.
In the Attorney General vs. Davis, (II. Atkins, 212); Lord Hardwick says, that, it is not necessary, that, evey corporate act,, should be attested by the seal of the corporation. Such as the appointment of a Chap^ lain, or a presentation to a living, &c.
The same sentiment is expressedin “the Attorney-General vs. Scott, I. Vesey, 413; and in Venirs Abr. 268, et sequel; and in Chitty on Contracts, 84; and in Bacon’s Abr. Cor’n. e. 3; and in Blow. 91, b; and in II. Saunders, 305.
The supreme court of the United States, decided in the case of the Bank of Columbia vs. Patterson’s administrator, (VII. Cranch, 306) that assumpsit, on-either an express promise, by an agent of a corpora *204 tion, or on a promise, implied by law, may be maitV ta'ne<^ against the corporation. And, in that case, it laid down as a sound rule of law, “that whenever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts, made by its authorized agents, are express promises of the corporation; and all duties imposed on them bylaw,and all benefits, conferred attheirrequest, raise implied promises, for the enforcement of which, an action may “well lie.”
Many cases are cited in that opinion, and the foregoing is the principle, which the court extracted from all the cases which it received, both in favor of, and opposed to, the doctrine which it establishes.
The same doctrine, has been repeatedly recognized in New York. See Stafford vs. the Alderman, &c. of Albany, (VI. Johnson’s Reports, 1) Danforth vs. the Schoharic Turnpike Road, (XII. Johnson, 227.)
And it has been as well settled in Massachusetts, in the case of Ilajdon vs. the Middlesex Turnpike, (X. Tyng’s Mas. Rep. 397.
But this court has decided, that assumpsit cannot be maintained against a corporation, for work and labor, done to the use of the body politic, on its implied request, nor on the express request of its agent. See the Frankfort Bank vs. Anderson, III. Marshall, 1.
Anderson had built a vault for the bank, and brought assumpsit, “quantum meruit,” for his work, and this court decided that the action was not sustainable. In the opinion, the court says, “it is true that a statute, which creates a coporalion, may authorize it to speak by other means, than a seal. But if it is not thus authorized, ■ the common law supplies the .seal, as the universal mode.”
It is not the province of the court to review the case of the Bank vs. Anderson, nor attempt to qualify the comprehensive principle which it establishes. For, however, we might decide in a similar case, if we were left free, lo pursue our own opinion of the reason and authorities, and analogies, which, would apply to it, the decision in III. Marshall, is peremptory and authoritative. It has been acquiesced in, and *205 no attempt has been made to remedy any of the ineon-venient or unjust consequences, which might result in some cases, from the recognition of the doctrine cs-tablished in that case. We must, therefore, consider the law as settled by (his case, as far as the facts of the case, render it judicial and applicable.
where duty is imposed on byTtatuteD’ assumpsit to discharge it, s
Whatever has' engaged to do by its record, will ¿^¿liability, ^Tatlon^ c¡th'er ex-’ press or implied.
But the court did not decide in “the Bank vs. Anderson,” that a corporation may not be bound by its record, or by law, without the certification of its liability, by its seal. It would not be reasonable to suppose that such a principle could have been sanctioned by the enlightened judges, who rendered that opinion.
An artificial, as well as a natural person, is bound by the law: and when a duty is imposed, by positive law, on a corporation, there is no reason why an assump-sit, to discharge the incumbent duty, should not be implied, as readily as it would be in the case of a natural person. To exonerate a corporation from liability, in such a case, unless it had become bound by its cor-quorate seal, would be unjust and unreasonable, and strangely inconsistent.
It would be equaiiy repugnant to reason and analogy, to permit a corporation to deny or evade the legal effects of its own record. The seal is not necessary to the validity, or conciusiveness of its record.
Whatever a corporation has done or engaged to do, by record, or whatever the law would infer from its record that it had agreed to, or is bound to do, will subject it to legal liability, to the extent of the obligation,either expressed or implied.
These two propositions are too well fortified by authority, to btrseriously controverted. And they do not conflict with any thing settled in the cáse, in III. Marshall.
Suppose the act of incorporation ' require the corporate body, to pay to another institution, a sum of money, as a bonvs for its charter, would not the law imply an assumpsit to pay the money; and might not the beneficiary maintain an action of assumpsit, to recover it, without shewing any express contract to pay it, attested by the corporate seal?
if law require corporation to appoint clerk, and its records shew his appointment, but shew no fixed salary allotted to him, he may recover value of his services in assumpsit.
Suppose the charter made it the duty of the cofc-r poration, to receive and pay out deposits, and its reshew that it had received a large sum on deposit, might not the depositor recover the amount in as-sumpsit, without proving the fact of deposit by the seal?
Suppose the act require the corporation to appoint' a clerk, and its record shew that he has beenappointed, without any express contract for salary, could not the clerk recover the value of his services in an action of assumpsit? An appropriate answer cannot be withheld.
The law authorized the appointment of clerks, by the Bank of Kentucky, and fixed the maximum.of their salaries.
If, therefore, Waller had been, as he has averred, regularly appointed a clerk, and has acted as such, and the books of the bank shew the fact of his appointment, he is entitled to his salary, although he made no positive contract with the bank, which he$f can establish by the exhibition of its seal.
From the law and the record, a promise will be-implied.
And we presume that this must have been the opinion of our predecessors, else, they would not have granted a supersedeas unanimously in this case.
It is our opinion, therefore, that, assumpsit may be maintained in this case. And, therefore, as the declaration is substantially good in other respects, the circuit court erred in sustaining the demurrer to it.
In the last count, it is averred, that Waller had been employed by the bank, as fifth clerk; and that in consequence of the actof 1825, (Session Acts,74) abolishing the fourth and fifth clerkships, the third and fourth clerks were dismissed, and he was appointed third clejk. It also avers that the bank had, prior to that time, fixed the salary of third clerk at $800; and therefore, he claims $¡800 for his services, for the year 1826.
By the act of 1825, it is enacted that the salary of the first cleds,; shall not exceed $1000; and that of *207 the second and third clerks shall not exceed $800 each.
The counsel for the bank insists, that Waller is entitled to no more than was allowed to the lifth clerk, unless he can prove an express contract for more.
As the case, when it shall be remanded, may turn on this point; it may be proper to decide it.
If it be true, that the salary of the third clerk, was fixed at $800, Waller will be entitled to that sum, for his services as third clerk, unless he agreed to serve for a less sum.
If the salary were jnot so fixed by the bank, the jury would have a right to estimate the compensation according to the facts which shall be proved.
If it had been the uniform and established usage of the bank, to allow to its clerks, the maximum compensation which it was authorized to give them, the .jl&ry should infer, in the absence of any countervailing fact, that the understanding between Waller and the bank, when he was appointed third clerk, was, that he should receive $800. If no such practical construction, of the laws regulating the salaries, be proved, Waller would be entitled to the value of his services, not to exceed $800.
The services of third clerk would be worth more, after the number of clerks was reduced, than when there were five clerks; and, consequently, it would be reason-able to suppose, that Waller should receive more for his services as third clerk,, than wlmt he was allowed as fifth clerk.
But if the salary of third clerk had been fixed, by resolution, at §800, Waller would, at" all events, be entitled to that sum. It is immaterial what may have been the motives of the bank, in translating him fo the place'of third clerk; if it .made no positive contract with him, he had a right to expect that he would be allowed the salary attached to Ihe station, and the 4aw would give him a right to demand if.
Denny, for plaintiff; Crittenden, for defendants.
Judgment reversed, and the cause remanded, foi proceedings consistent with this opinion.